UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

___

| | |
|---|---|
| **Kelvin Lenar Lee,** | **Court File No.: 15-cv-4272 (WMW/HB)** |
| **Plaintiff,** | |
| v. | |
| | **DEFENDANTS' TRIAL BRIEF** |
| **Bryan Castle in his individual capacity as an officer of the Minneapolis Police Department and the City of Minneapolis,** | |
| **Defendants.** | |

___

A. **Trial counsel for Defendant Bryan Castle:**

Gregory P. Sautter, Esq. and Ivan Ludmer, Esq.
350 South 5th Street, Room 210
Minneapolis, MN 55415
ivan.ludmer@minneapolismn.gov
gregory.sautter@minneapolismn.gov

B. **Jury or Bench Trial:** This case is to be tried by jury.

C. **Length of Trial:** Defendant believes this trial will last between two and three days, including jury selection, all testimony and argument.

D. **Jurisdiction:** Under 28 U.S.C. §1331, this Court has original jurisdiction to hear Plaintiff's Count I, a claim under the 4th Amendment for excessive force, brought pursuant to 42 U.S.C. § 1983. Count I is the only operational claim in this lawsuit as Count II was dismissed through stipulation of the parties.

E.  Facts:

A Confidential Informant (CI) had told a Minneapolis Police Community Response Team (CRT) investigator that two men, one of them matching the description of Plaintiff, would be selling crack cocaine at the corner of 25th and South Lyndale Ave. on May 30, 2014. Officer Castle was part of a Police surveillance and seizure operation set up to observe the transaction and pursue and arrest the suspects should probable cause to arrest be developed. Officer Castle went to the location in an unmarked car and took up a position of cover a short distance from the identified corner. He waited there while others watched the corner.

Plaintiff was high on crack cocaine when he went to 25th and Lyndale that day to perform drug transactions. Plaintiff was observed standing near the corner of 25th and Lyndale while using his cell phone repeatedly. Police observed a likely drug transaction with a red pickup truck when Plaintiff approached the truck, reached into his trousers, then through the truck's window, and then counted money after the truck pulled away.

Five to ten minutes later, Plaintiff crossed Lyndale and got into a red, two-door Mitsubishi. The vehicle soon turned left across four lanes of traffic and drove through a convenience store parking lot. It then turned from the parking lot eastbound onto 25th Street South. The driver matched the CI's description of Plaintiff's accomplice.

At that point, Officer Werner, the lead investigator on the case, ordered the Mitsubishi stopped and the occupants arrested. Sergeant Jindra followed the vehicle, and, at 25th and Harriet Ave. South, moved his unmarked car in front of the Mitsubishi, forcing it to stop. Castle, also in an unmarked car, turned his emergency lights on and pulled up behind the Mitsubishi, preventing escape. The driver of the Mitsubishi put his car into reverse, and slowly backed up towards Castle's car, and eventually struck it.

As the Mitsubishi rolled backwards, Plaintiff got out of the car quickly. Castle was getting out of his unmarked squad as well, and identified himself, and Plaintiff recognized that Castle was with the Police Department. Plaintiff threw a bundle of what turned out to be crack cocaine toward the curb and walked South on Harriet. Castle called out the drop of suspected contraband and ordered Plaintiff to stop. Plaintiff instead began to run. Castle chased Plaintiff on foot southbound on Harriet, and across the street near mid-block,

where Plaintiff dropped another bundle of what turned out to be crack cocaine on the street.

Plaintiff never stopped running and, as he got to the sidewalk on the east side of Harriet, Castle caught up to him and tackled Plaintiff to the ground so that both men were face-down, with Castle above.

Once on the ground, Plaintiff immediately started struggling to get up, pushing up with both his hands, raising his neck and shoulders. When Plaintiff pushed up, instead of striking Plaintiff, Castle used Plaintiff's exposing of his neck to move into a vascular neck restraint while using his weight to keep Plaintiff down. Castle chose to use the vascular neck restraint because it was the best option available to him. He was alone with the Plaintiff, half a block from the stop, armed only with his hands and a firearm. Plaintiff was suspected of selling drugs and had fled from police, and it was reasonable to assume Plaintiff was armed. Castle needed to get Plaintiff under control as quickly as possible. With the tools available to him, the neck restraint made sense. He did not want to use deadly force, and the neck restraint avoided using hand, elbow, and knee strikes that would have injured Plaintiff, and put Castle at risk as well.

Once Castle placed his arm around Plaintiff's neck, protecting Plaintiff's trachea in the wedge of his elbow, Castle applied pressure to both sides of Plaintiff's neck. To Castle's surprise, he soon heard Plaintiff snoring, and

Plaintiff stopped resisting. As soon as he heard Plaintiff's change in breathing pattern, Castle released the pressure on Plaintiff's neck, but kept him in the neck restraint position. Moments after Castle released the pressure, the "snoring" ceased and Plaintiff began struggling again.

In response to Plaintiff's renewed struggling, Castle applied pressure again. Castle's partner, Officer Karshbaum, arrived and the two were able to handcuff Plaintiff with no additional force. Castle released the pressure as or before he helped handcuff Plaintiff.

Once the officers gained control over Plaintiff, he was breathing heavily, sweating profusely and he would or could not sit up. Officers called for an ambulance, and Plaintiff's handcuffs were moved from back to front so he could breathe easier. After a few minutes, Plaintiff said he was "OK" and the ambulance was cancelled. After officer told Plaintiff he was going to the precinct for processing, he stated he had medical issues, that he went unconscious and that he urinated himself. Plaintiff asked for medical assistance, and an ambulance was called again. Plaintiff was transported to Hennepin County Medical Center for treatment.

11.49 grams of crack cocaine was found at the scene where Plaintiff dropped it. On June 23, 2015, Plaintiff entered a plea of guilty to second degree

5

possession of six grams or more of crack cocaine, a felony offense. Plaintiff has exhausted all appeals of his conviction.

**F.     Claims or Defenses:**

<u>Count I – Unreasonable Seizure by Excessive Force by Bryan Castle</u>

The sole claim for trial in this matter is the claim of excessive force against Bryan Castle for his tackle and use of the vascular neck restraint on Plaintiff.

<u>Defenses:</u>

- Castle's use of force was not excessive under the objective reasonableness standard outlined in *Graham v. Connor*, 490 U.S. 386, 397 (1989).

- Even if the Jury determined that Castle committed a constitutional violation, Castle is entitled to qualified immunity for his use of force as it was not clearly established at the time that he could not tackle a fleeing suspect, and use a vascular neck restraint on the suspect as he continued to struggle.

- Plaintiff has failed to mitigate his damages, if any.

- Plaintiff's claimed damages were not caused or contributed to by the allegedly unlawful actions of Bryan Castle.

- Plaintiff's damages, if any, were caused by, or contributed to by Plaintiff's negligent, intentional or criminal acts, acts for which Plaintiff has pled guilty to felony charges for.

**G.   Unresolved Issues:**

  a.  **The City of Minneapolis should be removed from any caption on documents provided to the Jury.**

Given that the City of Minneapolis is no longer a party to this lawsuit, the City requests that it be removed from the caption and any documents provided to the Jury. The same principles that underlie the Fed. R. Evid. 411 prohibition introduction of evidence of the existence of liability insurance apply to removing the City from the caption viewed by the Jury. Listing Minneapolis as a defendant risks informing the jury of the existence of indemnity for Castle, and makes a verdict against him more likely. The parties have discussed this request, and Plaintiff has agreed to the City's request to remove the City from the caption visible to the jury.

  b.  **Bryan Castle did not use excessive force.**

Officer Castle is entitled to have the excessive force claim against him dismissed as his use of force was reasonable under the circumstances. Three factors should be considered in determining whether an officer has reasonably used force: (1) the severity of the crime at issue; (2) whether the suspect poses an immediate threat to the safety of the officers of others; and, (3) whether the

7

suspect is actively resisting arrest or attempting to evade arrest by flight. *Graham v. Conner*, 490 U.S. 386, 396 (1989).

An officer reasonably perceives a heightened risk of serious physical harm when a suspect disobeys the officer's orders. *See, e.g., Billingsley v. City of Omaha*, 277 F.3d 990, 993-94 (8th Cir. 2002) (failing to halt after being ordered to stop multiple times). Likewise, an officer in pursuit of a felony drug suspect who was a passenger in a car with a suspected drug dealer, could reasonably conclude, without more, that the suspect is armed and dangerous, and engaged in the same enterprise as the drug dealer: "Because weapons and violence are frequently associated with drug transactions, it is reasonable for an officer to believe a person may be armed and dangerous when the person is suspected of being involved in a drug transaction." *United States v. Bustos-Torres*, 396 F.3d 935, 943 (8th Cir. 2005), *see also State v. Lemert*, 843 N.W.2d 227, 232 (Minn. 2014) (evaluating the legality of a pat search the Supreme Court concluded that it is objectively reasonable to believe that a passenger in a suspected drug dealer's truck is armed and dangerous).

When considering these factors, courts should do so according to the "perspective of a reasonable officer at the scene, rather than with the 20/20 vision of hindsight." *Graham*, 490 U.S. at 396. The Court also noted that "[w]ith respect to a claim of excessive force, the same standard of reasonableness at the

moment applies: Not every push or shove, even if it may later seem unnecessary in the peace of the judge's chambers, violates the Fourth Amendment. *Id.* at 397.

The determination of whether the use of force was reasonable requires "balancing the nature and quality of the intrusion on the individual's Fourth Amendment interests against the countervailing governmental interests at stake." *McKenney,* 635 F.3d at 359. Furthermore, the calculation "must embody allowance for the fact that police officers are often forced to make split-second judgments--in circumstances that are tense, uncertain, and rapidly evolving--about the amount of force that is necessary in a particular situation. *Graham,* 490 U.S. at 396-97. Thus, in analyzing Plaintiff's excessive force claim, the context of the interaction between Officer Castle and Plaintiff must be considered.

Castle was part of a drug enforcement team which went to 25th and Lyndale to observe and arrest suspects in a suspected drug transaction. Plaintiff matched the description of one of the suspects, and was observed engaging in a suspected drug transaction. When the police attempted to apprehend him, Plaintiff got out of the car, threw some drugs down and fled on foot. Castle could reasonable assume that Plaintiff was armed and dangerous and intended to evade capture for felony drug possession and/or sale. Castle ordered Plaintiff to stop and ran after him. Plaintiff did not stop, and Castle was forced to tackle him in order to slow his retreat. Castle was alone, and with Plaintiff struggling,

9

his options seemed limited to grappling, striking, or using his firearm. When Plaintiff pushed up, lifting his head and extending his neck, he provided Castle with a better option. Castle encircled Plaintiff's neck with an arm, and applied pressure to the sides in the form of a vascular neck restraint. Plaintiff stopped resisting and Castle heard what sounded like snoring. Castle let up, and Plaintiff soon started resisting again, still trying to escape. Castle again applied pressure, and, with the help of his partner, was able to handcuff Plaintiff. Neither time did Castle intend to put Plaintiff to sleep.

The Vascular Neck Restraint is an intermediate use of force that is authorized and, under the totality of the circumstances, reasonable and not excessive under the circumstances found here. Likewise, the tackle was reasonable and appropriate given Plaintiff's action.

This is a case of excessive force, not of false arrest and excessive force. As Plaintiff pled guilty and was convicted of felony possession of cocaine related to his arrest by Bryan Castle, Defendant will object to any testimony or argument challenging the validity of Plaintiff's arrest. *Heck v. Humphrey*, 512 U.S. 477, 486, 114 S. Ct. 2364, 2372, 129 L. Ed. 2d 383 (1994).

    c.    **Motions in Limine:**

Defendant is bringing four motions *in Limine.* In order to work in good faith towards resolution of the issues going to trial, the Parties have discussed

their motions *in Limine* several times in the week before this filing. In those discussions they have narrowed the issues, and found common ground where they could. Defendant's remaining motions *in Limine* concern the following issues:

1. Motion *in Limine* No. 1, for an order prohibiting reference to, or evidence of the allegation from unavailable witness Josh Tetzloff that Defendant yelled "When I catch you I'm gonna fuck you up!" as the description of Tetzloff's allegation is hearsay, as well as the allegation itself.

2. Motion *in Limine* No. 2, for an order prohibiting the testimony of Pastor Monica Delaurentis and others who were never disclosed during discovery.

3. Motion *in Limine* No. 3, for an order prohibiting the testimony and evidence of the opinions on causation of any injuries or conditions allegedly related to the events in this litigation as Plaintiff failed to provide the required disclosures under Fed. R. Civ. P. 26(a)(2)(c).

4.  Motion *in Limine* No. 4, for an order prohibiting the testimony of Clinical Psychologist Dr. Lisa Legrand, and evidence of Plaintiff's mental condition, as Plaintiff has affirmatively stated in his interrogatory responses that he "has not placed his mental condition at issue in this lawsuit."

Dated:  September 1, 2017

SUSAN L. SEGAL
City Attorney
by

*s/GregoryPSautter*
GREGORY P. SAUTTER
Attorney Reg. No. 0326446
(612) 673-2683
IVAN LUDMER
Attorney Reg. No. 0389498
(612) 673-2478
Assistant City Attorneys
350 South Fifth Street
Room 210, City Hall
Minneapolis, MN 55415

*Attorneys for Defendant Bryan Castle*