UNITED STATES DISTRICT COURT

DISTRICT OF MINNESOTA

---

Kelvin Lenar Lee,　　　　　　　　　　　　　　　Case No. 15-4272

　　　　　　Plaintiff,

　　　　　　　　　　　　　　　　　　　　　　PLAINTIFF'S TRIAL BRIEF

vs.

Bryan Castle in his individual capacity as
an officer of the Minneapolis Police Department and
the City of Minneapolis,

　　　　　　Defendants.

---

### A. Trial Counsel for Plaintiff

Oliver Edward Nelson III, #0347280
2915 South Wayzata Boulevard
Minneapolis, MN 55405
Telephone: 612-767-1871
Fax: 612-767-1872

### B. This case is to be tried by a jury.

### C. The Plaintiff anticipates that this trial will last 4-5 days, including jury selection and jury charge.

### D. JURISDICTION:

This is an action for money damages for injuries sustained by Plaintiff Kelvin Lenar Lee as a result of the use of excessive force, unreasonable seizure, and violation of his constitutional rights by Defendant Castle. At all relevant times, Plaintiff was a citizen of the United States and a resident of the state of Minnesota. Furthermore, at all relevant times, the Defendant was a citizen of the United States and resident of the State of Minnesota and a duly appointed, acting officer of the Minneapolis Police Department. Lee brings this action pursuant to 42 U.S.C. §§ 1983 and 1988, the Fourth Amendment of

the United States Constitution, and 28 U.S.C.§ § 1331 and 1342(3), which confer original jurisdiction of this Court over this matter.

E. **FACTS**

On May 30, 2014, at approximately 11:00 a.m., in the area of 25th Street West and Lyndale Avenue South in Minneapolis, Kelvin Lee ("Lee") allegedly fled Minneapolis police officers on foot after attempting to purchase some cocaine. Defendant Officer Bryan Castle ("Castle") began to chase Lee down on foot. While chasing him, Castle yelled out at Lee "Once I catch up with you, I am going to fuck you up." When Lee see saw Castle quickly approaching, Lee put his hands up. Nevertheless, when Castle caught up with Lee, he tackled him to the ground in front of an apartment building on Harriett Avenue.  After tackling Lee, Officer Castle positioned himself on top of Lee and placed him in a choke hold.  When Castle first applied the choke hold he whispered in Lee's ear, "don't you know that I can kill you for running from the police?" Lee complained to Castle that he could not breathe.  Castle applied the choke hold again on Lee which rendered him unconscious. Castle never made an attempt to hand cuff Lee while he was unconscious.  At his deposition, Castle testified that the hold he applied on Lee, which he termed a "neck restraint" is not supposed to render a subject unconscious. He also testified that this type of neck restraint is not supposed to cause injury to the criminal suspect. As a result of Castle's Use of Force, Lee sustained a permanent injury to his neck.

 Even if one accepts that the hold that Officer Castle applied on Lee was a neck restraint, at best it was an unconscious neck restraint which MPD's manual states is only warranted when a suspect is either exhibiting active aggression or, for life saving purposes, or if a suspect is trying to gain control of the officer, and lesser attempts at control would have been ineffective.  Officer Castle acknowledged that none of the circumstances were present here.

F. Plaintiff Kelvin Lee claims that Defendant Castle, under color of state law, violated and deprived him of his clearly established and well-settled civil rights to be free from the use of excessive force and unreasonable seizure. Defendant Castle subjected Lee to this deprivation of rights either maliciously or acting with reckless disregard for whether his rights would be violated by his actions. Defendant Castle claims that his actions were reasonable under the circumstances.

The determination of whether force used by an officer is reasonable under the Fourth Amendment requires a balancing of the nature and quality of the intrusion on the individual's Fourth Amendment interests against the countervailing governmental intrusions at stake. *Graham v. Connor*, 490 U.S. 386, 396 (1989). The question for the jury is, whether, judging from the perspective of a reasonable officer, the totality of the circumstances justifies the force used. *Id.*

Lee will testify that before he was tackled to the ground, he had placed his hands up to signal his surrender. At this point, Lee was not resisting arrest, nevertheless, Castle tackled Lee to the ground, got on top of him, and placed him in a choke hold. Based upon Castle's comments to Lee while he was chasing him, and his comments to Lee while he was applying the chokehold, Castle seemed determined to punish Lee for his act of fleeing. The application of a chokehold under these circumstances represents the use of deadly force. Deadly force was not warranted under these circumstances because, as Castle testified to, he never felt that his life or anyone else's life was in danger during his encounter with Lee. Castle's application of a choke hold against Lee also represents excessive force in that after he tackled Lee, completely immobilized him, and rendered him unconscious by the chokehold, he never tried to handcuff Lee before applying the chokehold again.

Castle claims that after he tackled Lee to the ground, Lee had his hands underneath him and was trying to raise himself off the ground, thereby continuing to resist arrest. Castle claims that this is the reason he felt justified in applying a neck restraint on Lee. Castle has acknowledged that the neck restraint applied he applied on Lee caused Lee to pass out even though he intended to apply a conscious neck restraint. Castle has also acknowledged that the type of neck restraint he applied on Lee is not supposed to cause the suspect physical injury even though doctors have confirmed that Lee sustained a permanent injury to his neck as result of the hold that Castle applied on Lee.

Dr. Louis Saeger will testify that Castle's application of a chokehold on Lee resulted in Lee sustaining ruptured disc in his cervical spine, an injury that Lee will never fully recover from.

In addition to seeking compensatory damages for his injuries, Plaintiff seeks punitive damages under *Smith v. Wade*, 46 U.S. 30 (1983). A jury may be permitted to assess punitive damages in a § 1983 action when the Defendant's conduct involved reckless or callous indifference to Plaintiff's federally protected rights, as well as when it was motivated by evil motive or evil intent. *Id.*

G. **Unresolved Issues**

   a. The admissibility of Lee's prior criminal history other than felony convictions and crimes of dishonesty.
      i. Any evidence of Lee's criminal history and prior bad acts are inadmissible at trial as irrelevant, unfairly prejudicial, and inadmissible character evidence.
      ii. Authority: Federal Rules of evidence 401, 402, 403 and 404(b)

   b. The admission of Castle's statement to the Lee while he was chasing him: "Once I catch up with you, I'm going to fuck you up."

      i. Officer Castle testified at this deposition that he very probably made this statement while chasing after Lee, therefore is not a hearsay statement but is a party admission.

   iii. Authority: Federal Rule of Evidence 801(d)(2)

c. The admissibility of Officer Jeffrey Werner and Jeffrey Jindra's Testimony.

      i. Evidence regarding Jeffrey Werner and Jeffrey Jindra's testimony is cumulative, irrelevant and overly prejudicial.

     ii. Authority: Rules 402 and 403.

d. The admissibility of Katherine Wood's 911 recordings and Testimony.

      i. The actual 911 call should be excluded because it was not heard by Defendant Castle and is therefore irrelevant and overly prejudicial.

     ii. Authority: Rules 402 and 403; *Graham v. Connor,* 490 U.S. 386, 396 (1989); *Jackson v. City of Gahanna,* 2011 WL 587283 * 5 (S.D. Ohio Feb, 9, 2011); *Maples v. Volmer,* 2013 WL 1677104 * 37-39 (D.N.M. March 31, 2013).

e. The admissibility of Ralph Yehle's Testimony

      i. His testimony should be excluded because it is irrelevant, cumulative and overly prejudicial.

Dated 9/1/2017, 2017.　　　　　　　　　MAGNA LAW FIRM

By _____

Oliver Edward Nelson III
Attorneys for Plaintiff
2915 South Wayzata Boulevard
Minneapolis, MN 55405
612-767-1871